Filed
1/4/2016 10:53:33 AM
**Annie Rebecca Elliott**
District Clerk
Fort Bend County, Texas
Debra Elizondo

NO. __**16-DCV-228929**__

| | | |
|---|---|---|
| **RAFAEL F. VAZQUEZ and** | § | **IN THE DISTRICT COURT** |
| **NORMA L. VAZQUEZ** | § | |
| *Plaintiffs,* | § | |
| | § | Fort Bend County - 400th Judicial District Court |
| V. | § | |
| | § | **____th JUDICIAL DISTRICT** |
| **SELENE FINANCE, L.P. and** | § | |
| **SELENE FINANCE, L.P., N.A., and** | § | |
| **LOANCARE, A DIVISION OF FNF** | § | |
| **SERVICING INC.** | § | **FORT BEND COUNTY, TEXAS** |
| *Defendants.* | | |

### PLAINTIFF'S ORGINAL PETITION, APPLICATION FOR TEMPORARY RESTRAINING ORDER, TEMPORARY INJUNCTION AND PERMANENT INJUNCTION

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES, RAFAEL F. VAZQUEZ and NORMA L. VAZQUEZ, Plaintiffs herein, and file their Plaintiffs' Original Petition and Application for Temporary Restraining Order and Temporary and Permanent Injunction against SELENE FINANCE, L.P. and SELENE FINANCE, L.P., N.A., defendants herein, and in support thereof, would show the Court the following:

### DISCOVERY CONTROL PLAN

Pursuant to Rule 190.3 of the Texas Rules of Civil Procedure, Plaintiff elects to conduct discovery under a level 2 discovery control plan.

### PARTIES AND SERVICE

1. Plaintiffs, RAFAEL F. VAZQUEZ and NORMA L. VAZQUEZ (hereinafter collectively and individually referred to as "**Plaintiff**" and "**Plaintiffs**") are individuals with residence in Harris County Texas.



2.      Defendant, SELENE FINANCE, L.P., (hereinafter also referred to as "**Selene**" and "**Mortgagee**"), a Foreign Limited Partnership with a registered office with the Texas Secretary of State of 9990 Richmond Ave, Suit 400 South, Houston Texas 77042 and can be served by serving its registered agent C T Corporation System, 1999 Bryan St, Ste 900, Dallas Texas 75201-3136.

3.      Defendant, SELENE FINANCE, L.P., N.A., (hereinafter also referred to as "**Servicer**"), is not registered with the Texas Secretary of State. An address obtained from a "Notice of Trustee Sale" reflects an address of 9990 Richmond Ave., Suite 400S, Houston Texas 77042-4546.

4.      Defendant, LOANCARE, A DIVISION OF FNF SERVICING INC., (hereinafter also referred to as "**LoanCare**"), a Foreign Limited Liability Company (LLC) with a registered office with the Texas Secretary of State of 3637 Sentara Way, Virginia Beach, VA 23452 and can be served by serving its registered agent C T Corporation System, 1999 Bryan St, Ste 900, Dallas Texas 75201-3616.

## JURISDICTION AND VENUE

5.      The Court has jurisdiction over the lawsuit because the amount in controversy exceeds the Court's minimum jurisdictional requirements and because the Defendants are doing and/or did business in Texas.

6.      Venue is mandatory in Harris County because the subject matter of the suit is real property located in Harris County. *Tex. Civ. Prac. & Rem. Code* §15.011. Also, venue is proper in this Court because the primary relief requested is specific performance *Billings v. Concordia Hisitage Ass'n*, 960 S.W.2d 688, 693 (Tex.App.—El Paso 1997, pet. Denied).

## FACTS

7.      On or about September 5, 2008, Plaintiffs, purchased their homestead residence at
█████████████████████████████████ The legal description for the property is as
follows:

> Lot Six (6), in Block One (1) of Cinco Ranch Southwest Section Eleven
> (11), a Subdivision in Fort Bend County, Texas, according to the
> Official Public Records of Fort Bend County, Texas, In Plat No.
> 20070170 of the Plat Records of Fort Bend County, Texas.

8.      To purchase the property, Plaintiffs secured a Promissory Note and Deed of Trust
to Secure Payment from Lending Key Inc. for $246,163. *See Promissory Note and Deed of
Trust at Exhibit "A"*. In October 26, 2010, Plaintiffs received a modification from Mortgage
Electronic Registration Systems Inc. serving in sole capacity as nominee for the Lender and
Lenders successors and assigns. *See Modification Agreement at Exhibit "B"*. This Modification
was signed by LoanCare, a Division of FNF Servicing, Inc. However, LoanCare did not receive
it's interest in the mortgage until May 9th of 2012. *See Assignment and Transfer of Lien dated
May 9th 2012 at Exhibit "C"*.

9.      Due to financial difficulties, on July 2, 2012, Norma L Vazquez filed for Chapter
13 Bankruptcy Relief.[1] In this bankruptcy LoanCare filed several proof of claims indicating and
implying that the amount of arrearages on the loan was uncertain. *See Bankruptcy Cause No. 12-
35041 Court Registry Claim No. 10 at Exhibit "D"*.[2] Moreover, the amount stated in the proof
of claim is inconsistent with LoanCare's Notice of Default and Intent to Accelerate dated
October 22, 2015. In this Notice of Default LoanCare indicates that the balance of the loan is

---

[1] Cause No. 12-35041; Norma L. Vazquez filed in the United States Bankruptcy Court of the Southern District of
Texas at the Houston Division.
[2] Id.

$269,311.08. *See Notice of Default and Intent to Accelerate at Exhibit "E"*. LoanCare's Proof Of Claim indicates that the balance is $288,450.96 at Page 4. On this page, the Proof of Claim also reflects arrearages at a monthly payment of $ 1,109.74 on Principle and Interest while the Intent to Accelerate reflects a monthly payment of $1,512.73 on Principle and Interest. *See LoanCare Proof of Claim at Exhibit "F"*. Moreover, LoanCare's calculations were based on a monthly payment of $2,406.04 and the Proof of Claim indicates under the Annual Escrow Account Disclosure Statement that annual taxes will be escrowed at $897.45 on a monthly basis with the annual amount totaling $9,075.40. *Id. At Page 5*. These numbers do not compute. One-twelfth of $9,075.40 is $756.28 and the regular principle and interest payment is $ 1,470.71. The total monthly payment comes to $2,226.99. *See Modification Agreement at Exhibit "B"*.

10.    Plaintiff's bankruptcy was dismissed on August 12, 2014. During the bankruptcy, plaintiff's Bankruptcy Trustee paid to LoanCare $49,721.66. *See Bankruptcy Trustee William Heitkamp Payments to LoanCare at Exhibit "G"*.

11.    Since the bankruptcy, Plaintiffs and LoanCare have not been able to agree on the amount that is owed in the arrearages, interest, principle, and escrow. Plaintiff has requested a detail report on the payment allocations made by LoanCare but it has not been produced.

12.    In 2014, Plaintiffs requested that another modification be done so that the parties could agree on the numbers. LoanCare responded that because Plaintiff has previously obtained a modification, another modification would not be allowed.

13.    On or about June 15, 2015, Defendant, Selene Finance LP (Selene) became the holder of the mortgage and Selene Finance LP National Association (Servicer) had become the servicer of the Mortgage.

14. Plaintiff reached out to the Servicer and requested a Modification but was instead not responded to.

15. Servicer, rather than work with Plaintiffs, has moved to foreclose on the loan. The foreclosure is set to take place on January 5, 2016. *See Notice of Trustee Sale at Exhibit "H"*.

16. Plaintiff asserts that payments made from the bankruptcy and direct payments made to LoanCare were not properly accounted for or are missing.

## UNFAIR DEBT COLLECTION PRACTICES

17. Unfair Debt Collection Practices. Plaintiff charges the Defendants with Unfair Debt Collection Practices pursuant to Tex. Fin. Code. §§392.301-392.304.

18. The Texas Debt Collection Act (DCA) prohibits debt collectors from using wrongful practices in the collection of consumer debts. *Brown v. Oaklawn Bank*, 718 S.W.2d 678, 680 (Tex.1986); *Ford v. City State Bank*, 44 S.W.3d 121, 135 (Tex.App.—Corpus Christi 2001, no pet.).

19. The elements of a cause of action against a debt collector for unfair debt collection are the following: a) the defendant is a debt collector; b) the defendant committed a wrongful act in violation of the DCA; c) the wrongful act was committed against the plaintiff; d) the plaintiff was injured as a result of the defendant's wrongful act. *Elston v. Resolutoin Servs.* 950 S.W.2d 180, 185 (Tex.App.—Austin 1997, no writ; *Cathisman v. First State Bank*, 796 S.W.2d 299, 302 (Tex.App.—Austin 1990, no writ). See also, Tex. Fin. Code §§ 392.001-392.404. Debt collector includes creditors themselves. *Monroe v. Frank*, 936 S.W.2d 654, 660 (Tex.App.—Dallas 1996, writ dism'd).

a.   The wrongful acts committed by the defendants include, but are not limited to the following:

b.   Misrepresenting the character, extent, or amount of a consumer debt. *Waterfield Mortg. Co. v. Rodriguez*, 929 S.W.2d 641, 644-45 (Tex.App.—San Antonio 1996, no writ) (Defendant foreclosed on Plaintiff's home after repeatedly increasing amount due.)

c.   Using any false representation or deceptive means to collect a debt. *Casstevens v. Smith*, 269 S.W.3d 222, 234-35 (Tex.App.—Texarkana 2008, pet. denied).

## ESTOPPEL

20.   <u>Estoppel</u>. Plaintiff charges the Defendants with Estoppel.

21.   Estoppel is a principle that provides that an individual is barred from denying or alleging a certain fact or state facts because of that individual's previous conduct, allegation, or denial. A doctrine which hold that an inconsistent position, attitude or course of conduct may not be adopted to loss or injury of another. *Brand v. Fowers Mut. Protective Ass'n of Texas*, 95 S.W.2d 994, 997 (Tex.Civ. App. 1936).

22.   In particular, Plaintiff charges the defendant with its failure to properly account for funds received by Plaintiff. Additionally, plaintiff asserts that they will produce evidence that the defendants did commit acts of malfeasance, misfeasance, and nonfeasance.

## DECEPTIVE TRADE PRACTICES

23.   Plaintiff would show that Defendants engaged in certain false, misleading and deceptive acts, practices and/or omissions actionable under the Texas Deceptive Trade Practices

- Consumer Protection Act (Texas Business and Commerce Code, Chapter 17.41, et seq.), as alleged herein below.

24.    Unconscionable Action or Course of Action.    Defendant engaged in an "unconscionable action or course of action" to the detriment of Plaintiff as that term is defined by Section 17.45(5) of the Texas Business and Commerce Code, by taking advantage of the lack of knowledge, ability, experience, or capacity of Plaintiff to a grossly unfair degree.

25.    DTPA Violations under Other Statute.    Plaintiff would further show that Defendant engaged in false, misleading or deceptive acts as provided by the following "tie-in" statute: the Debt Collection Act (Texas Finance Code, Section 392.404(a)).

26.    Producing Cause.    Plaintiff would show that the acts, practices and/or omissions complained of were the producing cause of Plaintiff's damages more fully described herein below.

**BREACH OF CONTRACT (DEED OF TRUST).**
**STANDING AND NEGLIGENCE**

27.    For a sale under a deed of trust to be valid, the terms set out in the deed of trust must be strictly enforced. *UMLIC VP LLC v. T & M Sales*, 176 S.W.3d 595, 609 (Tex.App.—Corpus Christi 2005). Because a power of sale in a deed of trust is such a harsh method of collecting debts and of disposing of another's property, it can only be exercised by strict compliance with the note and conditions of the sale. *Id.* The laws existing at the time of contract is made, become a part of the contract and govern the transaction. *Wessely Energy Corp. v. Jennings*, 736 S.W.2d 624, 626 (Tex. 1987).

28.     The elements of a breach of contract are the following: a) there is a valid, enforceable contract; b) the plaintiff is a proper party to sue for breach of contract; c) the plaintiff performed, tendered performance of, or was excused from performing its contractual obligations; d) the defendant breached the contract; and e) the defendant's breach caused the plaintiff injury. *Foley v. Daniel*, 346 S.W.3d 687, 690 (Tex.App.—El Paso 2009, no pet.).

29.     The elements of a cause of action for negligence are the following: a) the defendant owed a legal duty to the plaintiff, b) the defendant breached that duty, and c) the breach proximately cause the plaintiff's injury. *Nabors Drilling, U.S.A., Inc. v Escoto*, 288 S.W.3d 401, 404 (Tex.2009).

30.     The Plaintiff entered into a Deed of Trust and Promissory Note with Lending Key Inc for the property that is the subject of this suit. These documents reflected each party's intent to be legally bound. *Domingo v. Mitchell* 257 S.W.3d 34, 40 (Tex.App.—Amarillo 2008, pet denied). The Plaintiff is a proper party with standing to sue on the contract.

31.     Defendant had a duty to disclose all material information necessary affecting plaintiff's rights as they related to any default. In all contracts parties have a duty to act with reasonable skill and diligence in performing the contract so as not to injure the other party or the other party's property by its performance. *Southwestern Bell Tel. Co. v DeLanney*, 809 S.W.2d 493, 494 (Tex. 1991). With every contract, there is a common law duty to perform it with care, skill, reasonable expedience, and faithfulness. *Id.*

   a. The Deed of Trust required Trustee in a foreclosure sale to follow applicable law.

   b. Pursuant to Texas Property Code Section 51.002(b)(1-2), Defendant, Selene had a duty to post a Trustee Notice of Sale of the January 5, 2016 foreclosure sale at the

courthouse door of each county in which the property was located. Plaintiff found no notice posted with the Fort Bend County.

c. Pursuant to Texas Property Code Section 51.002(e), Defendant, Selene had a duty to send its foreclosure notices to the last known address of the Plaintiffs on file with Mortgagee. The Notice of Trustee sale was not sent to Plaintiff's address at 24927 Garnet Shadow Lane Katy Texas.

d. The Deed of Trust gave plaintiff a right to reinstate his loan. See Deed of Trust at Provision 10 Page 5. In good faith Plaintiff attempted to reinstate his loan by requesting a modification. A modification would have cured the delinquency and allowed for reinstatement of the loan.

## VIOLATION OF CONSUNMER FINANCIAL PROTECTION ACT

32.     Plaintiff charges the Defendants with Violation of the Consumer Financial Protection Law. Plaintiff alleges that the Defendant did violate said law by their failure to property follow requirements under 12 C.F.R. 1024.

33.     None of the rules were followed by LoanCare and Selene in their responses to Plaintiff's modification request after January 1, 2014.

## IMMINENT HARM

34.     Unless this Honorable Court immediately restrains the Defendants, SELENE FINANCE, L.P. and SELENE FINANCE, L.P., N.A. from foreclosing on the loan, the Plaintiff will suffer immediate and irreparable injury, for which there is no adequate remedy at law to give Plaintiff complete, final and equal relief. More specifically, Plaintiff will show the court as follows.

35.    The harm to Plaintiff is imminent because on January 5, 2016, Plaintiffs' homestead residence located at ██████████████████████████ will be sold at a foreclosure sale.

36.    As a result of the foreclosure sale, Plaintiffs will lose a substantial amount or all of their equity in the home.

37.    This imminent harm will cause Plaintiffs irreparable injury, in that Plaintiffs will lose their home and the equity therein that they have built over the years. The property could be sold at the foreclosure sale and make its way into the hands of a bonified purchaser thus removing any possibility of Plaintiffs' opportunity regaining their title to the property.

38.    There is no adequate remedy at law, which will give Plaintiffs complete, final and equitable relief because Plaintiff is facing a foreclosure of his home, which is a unique asset. Plaintiffs has raised their family in this home and they share many memories with them at his home.

## PROBABLE IRREPARABLE HARM

39.    Despite the Plaintiff's protestations to Defendants, that the amount necessary to pay off the arrearage was less than what was being demanded so that an amount could be agreed to that would stop the foreclosure, the Defendants, unless restrained, will sell or cause the Plaintiffs' property to be sold. The Plaintiffs will suffer irreparable injury unless the foreclosure sale is restrained and enjoined. The foreclosure sale will deprive the Plaintiffs of the use and enjoyment of the property. Additionally, the Plaintiff will lose the right to sell or mortgage the property to a buyer or a potential buyer at some future date and will not obtain full benefit for the appreciated value of his property. Moreover, the property could make its way into title by a

bonified purchaser which would cost Plaintiffs the opportunity to restore rightful ownership of the property by title should Plaintiffs win this lawsuit.

## INADEQUATE REMEDY AT LAW

40.     The Plaintiffs will show that there is no remedy at law that is clear and adequate to protect the Plaintiffs' property interest against this wrongful foreclosure by the defendants, SELENE FINANCE, L.P. and SELENE FINANCE, L.P., N.A.   The Plaintiffs requests injunctive relief so that justice may be done, not merely for delay. The Plaintiffs have performed all conditions precedent.

## PROBABLE RIGHT TO RELIEF

41.     The Plaintiffs are of the belief that they have paid more payments than the Defendants are prepared to give him credit for.   Plaintiffs contends that the Defendants have miscalculated the amount of the debt.

## BOND

42.     Plaintiff is willing to post a reasonable temporary restraining order bond and requests the court to set such bond.

## REMEDY

43.     Plaintiff has met Plaintiff's burden by establishing each element, which must be present before this Court can grant injunctive relief, therefore Plaintiff is entitled to the requested temporary restraining order.

44.     Plaintiff requests the Court to restrain Defendants, SELENE FINANCE, L.P. and SELENE FINANCE, L.P., N.A., from executing the foreclosure on the property located at

██████████████████████████ or otherwise taking possession of the subject property during the pendency of this cause, or from otherwise disturbing or attempting to disturb Plaintiffs' peaceable possession and enjoyment of the property. Plaintiffs are likely to succeed on the merits of this lawsuit.

45.     It is essential that the court immediately and temporarily restrain SELENE FINANCE, L.P. and SELENE FINANCE, L.P., N.A., defendants herein, from foreclosing on Plaintiff and his family from their homestead residence before Plaintiff has been given an opportunity to cure the alleged default amount though assistance of this suit.

46.     On final trial on the merits, that the Court permanently enjoin SELENE FINANCE, L.P. and SELENE FINANCE, L.P., N.A. Defendants herein, from foreclosing on plaintiff without permission and order from the Court.

## PRAYER

WHISEFORE, PREMISES CONSIDERED, SIGIFREDO A. FLORES, Plaintiff herein, respectfully prays that:

38.     SELENE FINANCE, L.P., SELENE FINANCE, L.P., N.A., and LOANCARE, A DIVISION OF FNF SERVICING INC., Defendants, will be cited to appear and answer herein; A temporary restraining order will issue to SELENE FINANCE, L.P., SELENE FINANCE, L.P., N.A., Defendants, restraining Defendant and Defendant's officers, agents, servants, employees, successors and assigns, attorneys, constables, sheriffs, Justices of the Peace from directly or indirectly foreclosing on Plaintiff's property, located ██████████████████████████ ████ and legally described as:

> Lot Six (6), in Block One (1) of Cinco Ranch Southwest Section
> Eleven (11), a Subdivision in Fort Bend County, Texas, according to

the Official Public Records of Fort Bend County, Texas, In Plat No. 20070170 of the Plat Records of Fort Bend County, Texas.

or otherwise selling or taking possession of the subject property during the pendency of this cause, or from otherwise disturbing or attempting to disturb Plaintiff's peaceable possession and enjoyment of the subject property.

39.     The Court set a reasonable bond for the temporary restraining order, if deemed necessary.

40.     After notice and hearing, The Court set a temporary injunction to issue enjoining and restraining SELENE FINANCE, L.P., SELENE FINANCE, L.P., N.A., Defendants, Defendants' officers, agents, servants, employees, successors and assigns, constables, sheriffs, Justices of the Peace, and attorneys from directly or indirectly foreclosing on Plaintiffs' property, located at ████████████████████████ and legally described as:

Lot Six (6), in Block One (1) of Cinco Ranch Southwest Section Eleven (11), a Subdivision in Fort Bend County, Texas, according to the Official Public Records of Fort Bend County, Texas, In Plat No. 20070170 of the Plat Records of Fort Bend County, Texas.

41.     After trial on the merits, the Court permanently enjoin SELENE FINANCE, L.P., SELENE FINANCE, L.P., N.A., defendants, defendants' officers, agents, servants, employees, successors and assigns, constables, sheriffs, Justices of the Peace and attorneys from directly or indirectly foreclosing on Plaintiffs' property, located at ████████████████████████ ████ and legally described as:

Lot Six (6), in Block One (1) of Cinco Ranch Southwest Section Eleven (11), a Subdivision in Fort Bend County, Texas, according to the Official Public Records of Fort Bend County, Texas, In Plat No. 20070170 of the Plat Records of Fort Bend County, Texas.

or from otherwise disturbing or attempting to disturb Plaintiffs' peaceable possession and

enjoyment of the subject property without the approval of the Court.

Plaintiffs pray for the above relief and for such other and further relief, in law or in equity, to which Plaintiffs may be justly entitled.

Respectfully submitted,

**DOVALINA & EURESTE, LLP**

By: //

**Arturo R. Eureste**
Texas Bar No. 06702250
122 Tuam Street, Suite 100
Houston, Texas 77006
Tel. (713) 624-1010
Fax. (713) 624-1090
art@eurestelaw.com
Attorney for Plaintiffs
RAFAEL E. VAZQUEZ and
NORMA L. VAZQUEZ

14 | P a g e

## VERIFICATION

STATE OF TEXAS          §
                                   §

COUNTY OF HARRIS      §

        BEFORE ME, the undersigned authority, personally appeared RAFAEL F. VAZQUEZ,

who, on oath, stated that the statements made in the foregoing Application for Temporary

Restraining Order, Temporary Injunction and Permanent Injunction are true and correct.

                                       RAFAEL F. VAZQUEZ

        SUBSCRIBED AND SWORN TO BEFORE ME on the 4 day of January ,

2016, to certify which witness my hand and seal of office.

                                                                       

**Maria Gutierrez**
Notary Public,
State of Texas
Expires: 06/23/2019

                               Notary Public, State of Texas

NO. _____

| | | |
|---|---|---|
| **RAFAEL F. VAZQUEZ and** | § | **IN THE DISTRICT COURT** |
| **NORMA L. VAZQUEZ** | | |
| *Plaintiffs,* | § | |
| | § | |
| V. | § | |
| | § | |
| | § | **____th JUDICIAL DISTRICT** |
| **SELENE FINANCE, L.P. and** | § | |
| **SELENE FINANCE, L.P., N.A., and** | § | |
| **LOANCARE, A DIVISION OF FNF** | § | |
| **SERVICING INC.** | § | **HARRIS COUNTY, TEXAS** |
| *Defendants.* | | |

### AFFIDAVIT IN SUPPORT OF PLAINTIFF'S APPLICATION
### FOR TEMPORARY RESTRAINING ORDER

BEFORE ME, the undersigned authority, personally appeared RAFAEL F. VAZQUEZ, who being duly sworn, deposed as follows:

"My name is RAFAEL F. VAZQUEZ. I am at least 18 years of age and of sound mind. I am a legal resident of ███████████████████████████████ which is my homestead. I am personally acquainted and have personal knowledge with the facts alleged herein."

"I am the debtor under a Promissory Note secured by a Deed of Trust on my Homestead Residence."

"After my wife, Norma Vazquez's bankruptcy, I have requested a complete detail report on the payments and allocations made to the payments that I have made before, during, and after the Bankruptcy."

"The Defendants, LoanCare, and Selene Finance LP have yet to provide me with that report."

"I have read the foregoing petition and to my personal knowledge everything in it is true and correct."

"I do not agree with the amount that LoanCare and Selene Finance claim that I am in arrears." "I believe that I have sent payments to the wrong mortgagee and that those payments were not forwarded to the right mortgagee at the time. "

"I believe that LoanCare did not provide Selene Finance with an accurate accounting to payments and allocations made on my loan."

"Further affiant sayeth not."

RAFAEL F. VAZQUEZ

SUBSCRIBED AND SWORN TO BEFORE ME on  1 | 4 | 16 _____, by
Rafael Vasquez

Maria Gutierrez
Notary Public,
State of Texas
Expires: 06/23/2019

Notary Public, State of Texas

44-14-2982
C&S No. 44-14-2982 /FHA
Selene Finance LP

## NOTICE OF TRUSTEE'S SALE

**Assert and protect your rights as a member of the armed forces of the United States. If you are or your spouse is serving on active military duty, including active military duty as a member of the Texas National Guard or the National Guard of another state or as a member of a reserve component of the armed forces of the United States, please send written notice of the active duty military service to the sender of this notice immediately. Sender is: Codilis & Stawiarski, PC, 650 North Sam Houston Parkway East, Suite 450, Houston, Texas 77060**

**Date of Security Instrument:**  September 05, 2008

**Grantor(s):** Rafael F. Vazquez and Norma L. Vazquez

**Original Trustee:** Texas Lone Star Title, L.P.

**Original Mortgagee:**  Mortgage Electronic Registration Systems, Inc., as nominee for Lending Key Inc., its successors and assigns

**Recording Information:** Volume , Page , or Clerk's File No. 2008099434 in the Official Public Records of FORT BEND County, Texas

**Current Mortgagee:**  Selene Finance, LP

**Mortgage Servicer: Selene Finance LP, National Association** whose address is C/O 9990 Richmond Avenue Suite 400S Houston, TX 77042-4546 Pursuant to a Servicing Agreement between the Mortgage Servicer and Mortgagee, the Mortgage Servicer is authorized to represent the Mortgagee. Pursuant to the Servicing Agreement and Section 51.0025 of the Texas Property Code, the Mortgage Servicer is authorized to collect the debt and to administer any resulting foreclosure of the referenced property.

**Date of Sale:**   01/05/2016    **Earliest Time Sale Will Begin:**   1:00 PM

**The Substitute Trustee will sell the property by public auction to the highest bidder for cash at the place and date specified. The sale will begin at the earliest time stated above, or within three (3) hours after that time.**

**If the sale is set aside for any reason, the Purchaser at the sale shall be entitled only to a return of the funds paid. The Purchaser shall have no further recourse against the Mortgagor, the Mortgagee or the Mortgagee's attorney.**

Legal Description:
LOT SIX (6), IN BLOCK ONE (1) OF CINCO RANCH SOUTHWEST SECTION ELEVEN (11), A SUBDIVISION IN FORT BEND COUNTY, TEXAS, ACCORDING TO THE OFFICIAL PUBLIC RECORDS OF FORT BEND COUNTY, TEXAS, IN PLAT NO. 20070170 OF THE PLAT RECORDS OF FORT BEND COUNTY, TEXAS.

**Place of Sale of Property:** The foreclosure sale will be conducted in the area designated by the FORT BEND County Commissioners Court pursuant to Section 51.002 of the Texas Property Code as the place where the foreclosure sales are to take place, or if no place is designated by the Commissioners Court, the sale will be conducted at the place where the Notice of Trustee's Sale was posted.

**For Information:**
Codilis & Stawiarski, P.C.
650 N. Sam Houston Parkway East
Suite 450
Houston, TX 77060
(281) 925-5200

Jeff Leva as Substitute Trustee, Sandy Dasigenis as Successor Substitute Trustee, Lillian Poelker as Successor Substitute Trustee, or Cathy Cagle as Successor Substitute Trustee
c/o Servicelink Default Abstract Solutions
7301 N. State Hwy 161. Ste 305.
Irving, TX 75039



PETITIONER'S EXHIBIT "H"

**FINANCIAL SUMMARY - CASE 12-35041**

Print Page  Printer Friendly

NORMA VAZQUEZ paying **$3,550.00** MONTHLY

| Receipts | Rcpts/Deb/Refunds | Disbursements | Adjustments | | Show All |
|---|---|---|---|---|---|

Limits: Select Start Date ▼ | Select Claim ID ▼ | LOANCARE A DIVISION OF FNF SERVICING INC ▼       Check Status: Cleared Stale Dated Stop Payment Cancelled Voided Outstanding

| Date | Payee | Payee Name | Source / Check | Description | Receipts | Disbursements | Balance |
|---|---|---|---|---|---|---|---|
| 8/31/2014 | 3 | LOANCARE A DIVISION OF FNF SERVICING INC | 1256024 | AMOUNTS DISBURSED TO CREDITOR - MONTHLY DISBURSEMENTS | | $266.28 | |
| 4/30/2014 | 2 | LOANCARE A DIVISION OF FNF SERVICING INC | 1242085 | AMOUNTS DISBURSED TO CREDITOR - MONTHLY DISBURSEMENTS Pymt for Feb/2014 thru Mar/2014 | | $4,736.32 | |
| 3/31/2014 | 2 | LOANCARE A DIVISION OF FNF SERVICING INC | 1238689 | AMOUNTS DISBURSED TO CREDITOR - MONTHLY DISBURSEMENTS Pymt for Jan/2014 | | $2,368.16 | |
| 2/28/2014 | 2 | LOANCARE A DIVISION OF FNF SERVICING INC | 1235396 | AMOUNTS DISBURSED TO CREDITOR - MONTHLY DISBURSEMENTS Pymt for Dec/2013 | | $2,368.16 | |
| 1/31/2014 | 2 | LOANCARE A DIVISION OF FNF SERVICING INC | 1232122 | AMOUNTS DISBURSED TO CREDITOR - MONTHLY DISBURSEMENTS Pymt for Nov/2013 | | $2,368.16 | |
| 12/31/2013 | 2 | LOANCARE A DIVISION OF FNF SERVICING INC | 1228839 | AMOUNTS DISBURSED TO CREDITOR - MONTHLY DISBURSEMENTS Pymt for Oct/2013 | | $2,368.16 | |
| 11/30/2013 | 2 | LOANCARE A DIVISION OF FNF SERVICING INC | 1225661 | AMOUNTS DISBURSED TO CREDITOR - MONTHLY DISBURSEMENTS Pymt for Sep/2013 | | $2,368.16 | |
| 10/31/2013 | 2 | LOANCARE A DIVISION OF FNF SERVICING INC | 1222416 | AMOUNTS DISBURSED TO CREDITOR - MONTHLY DISBURSEMENTS Pymt for Aug/2013 | | $2,368.16 | |
| 7/31/2013 | 2 | LOANCARE A DIVISION OF FNF SERVICING INC | 1212607 | AMOUNTS DISBURSED TO CREDITOR - MONTHLY DISBURSEMENTS Pymt for Jul/2013 | | $2,368.16 | |
| 7/31/2013 | 2 | LOANCARE A DIVISION OF FNF SERVICING INC | 1212507 | AMOUNTS DISBURSED TO CREDITOR - MONTHLY DISBURSEMENTS | | $927.57 | |
| 6/30/2013 | 2 | LOANCARE A DIVISION OF FNF SERVICING INC | 1209200 | AMOUNTS DISBURSED TO CREDITOR - MONTHLY DISBURSEMENTS Pymt for Jun/2013 | | $2,368.16 | |
| 6/30/2013 | 3 | LOANCARE A DIVISION OF FNF SERVICING INC | 1209200 | AMOUNTS DISBURSED TO CREDITOR - MONTHLY DISBURSEMENTS | | $1,164.61 | |
| 5/31/2013 | 2 | LOANCARE A DIVISION OF FNF SERVICING INC | 1205918 | AMOUNTS DISBURSED TO CREDITOR - MONTHLY DISBURSEMENTS Pymt for May/2013 | | $2,368.16 | |
| 4/30/2013 | 2 | LOANCARE A DIVISION OF FNF SERVICING INC | 1202561 | AMOUNTS DISBURSED TO CREDITOR - MONTHLY DISBURSEMENTS Pymt for Apr/2013 | | $2,368.16 | |
| 3/31/2013 | 2 | LOANCARE A DIVISION OF FNF SERVICING INC | 1199259 | AMOUNTS DISBURSED TO CREDITOR - MONTHLY DISBURSEMENTS Pymt for Mar/2013 | | $2,368.16 | |
| 2/28/2013 | 2 | LOANCARE A DIVISION OF FNF SERVICING INC | 1195999 | AMOUNTS DISBURSED TO CREDITOR - MONTHLY DISBURSEMENTS Pymt for Feb/2013 | | $2,368.16 | |
| 1/31/2013 | 2 | LOANCARE A DIVISION OF FNF SERVICING INC | 1192854 | AMOUNTS DISBURSED TO CREDITOR - MONTHLY DISBURSEMENTS Pymt for Jan/2013 | | $2,368.16 | |
| 12/31/2012 | 2 | LOANCARE A DIVISION OF FNF SERVICING INC | 1189645 | AMOUNTS DISBURSED TO CREDITOR - MONTHLY DISBURSEMENTS Pymt for Aug/2012 thru Dec/2012 | | $11,840.80 | |
| | | | | **Totals:** | **$0.00** | **$49,721.66** | |



PETITIONER'S EXHIBIT 6

B 10 (Official Form 10) (12/11)

| UNITED STATES BANKRUPTCY COURT SOUTHERN DISTRICT OF TEXAS (Houston) | PROOF OF CLAIM |
|---|---|

| Name of Debtor<br>Norma Vazquez<br>aka Norma Salinas | Case Number<br>12-35041 | |
|---|---|---|

NOTE: *Do not use this form to make a claim for an administrative expense that arises after the bankruptcy filing. You may file a request for payment of an administrative expense according to 11 U.S.C. § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property):
LoanCare, A Division of FNF Servicing, Inc.

Name and address where notices should be sent:
LoanCare, a Division of FNF Servicing, Inc.
3637 Sentara Way
Virginia Beach, VA 23452
Telephone number: (800) 909-9525          email:

Name and address where payment should be sent (if different from above):



Telephone number:          email:

**COURT USE ONLY**

[x] Check this box if this claim amends a previously filed claim.

**Court Claim Number: 10-2**
(If known)

Filed on: **1/25/2013**

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars.

**1. Amount of Claim as of Date Case Filed:** $289,039.21

If all or part of the claim is secured, complete item 4.

If all or part of the claim is entitled to priority, complete item 5.

[x] Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

**2. Basis for Claim: Money Loaned**
(See instruction #2)

| 3. Last four digits of any number by which creditor identifies debtor:<br>4  5 6 9 | 3a. Debtor may have scheduled account as:<br>_____<br>(See instruction #3a) | 3b. Uniform Claim Identifier (optional):<br>_____<br>(See instruction #3b) |
|---|---|---|

**4. Secured Claim** (See instruction #4)
Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.

Nature of property or right of setoff: [x]Real Estate ☐Motor Vehicle ☐ Other

**Describe:** 24927 Garnet Shadow Lane, Katy, TX 77494

Value of Property: $_____

Annual Interest Rate 4.875% [x]Fixed or ☐Variable
(when case was filed)

Amount of arrearage and other charges, as of the time case was filed, included in secured claim, if any:

$31,866.77

Basis for perfection: Recorded Mortgage

Amount of Secured Claim:     $289,039.21

Amount Unsecured:     $_____

**5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a).** If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.

☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $11,725*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier – 11 U.S.C. §507 (a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5).

Amount entitled to priority:

☐ Up to $2,600* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7).

☐ Taxes or penalties owed to governmental units – 11 U.S.C. §507 (a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)(__).

$_____

*Amounts are subject to adjustment on 4/1/13 and every 3 years thereafter with respect to cases commenced on or after the d____

**6. Credits.** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See in____

B 10 (Official Form 10) (12/11)

PETITIONER'S EXHIBIT
"F"

**7. Documents:** Attached are redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements, or in the case of a claim based upon an open-end or revolving consumer credit agreement, a statement providing the information required by FRBP 3001©(3)(A).  If the claim is secured, box 4 has been completed, and redacted copies of documents providing evidence of perfection of a security interest are attached.  If the claim is secured by the debtor's principal residence, the Mortgage Proof of Claim Attachment is being filed with this claim. (See Instruction #7, and the definition of "redacted".)

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

**8. Signature:** (See Instruction #8)

Check the appropriate box.

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

☐ I am the creditor.   [x] I am the creditor's authorized agent.   ☐ I am the trustee, or the debtor,   ☐ I am a guarantor, surety, indorser, or other codebtor.
or their authorized agent.   (See Bankruptcy Rule 3005.)
(See Bankruptcy Rule 3004.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

| | |
|---|---|
| Print Name: | Beatrice Grevel |
| Title | Attorney |
| Company | Butler and Hosch, PA |

/s/ Beatrice Grevel #00796677     3/6/2013
(Signature)                                          (Date)

Address and telephone number (if different from notice address above):

13800 Montfort Drive, Suite 300

Dallas, TX 75240

Telephone number: (972) 233-2500     email: BKdepartment@butlerandhosch.com

*Penalty for presenting fraudulent claim.* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

---

## INSTRUCTIONS FOR PROOF OR CLAIM FORM

*The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, exceptions to these general rules may apply.*

### Items to be completed in Proof of Claim form

**Court, Name of Debtor, and Case Number:**
Fill in the federal judicial district in which the bankruptcy case was filed (for example, Central District of California), the debtor's full name, and the case number. If the creditor received a notice of the case from the bankruptcy court, all of this information is at the top of the notice.

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

**1. Amount of Claim as of Date Case Filed:**
State the total amount owed to the creditor on the date of the bankruptcy filing. Follow the instructions concerning whether to complete items 4 and 5. Check the box if interest or other charges are included in the claim.

**2. Basis for Claim:**
State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card. If the claim is based on delivering health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information. You may be required to provide additional disclosure if an interested party objects to the claim.

**3. Last Four Digits of Any Number by Which Creditor Identifies Debtor:**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor.

**3a. Debtor May Have Scheduled Account As:**
Report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor.

**3b. Uniform Claim Identifier:**
If you use a uniform claim identifier, you may report it here. A uniform claim identifier is an optional 24-character identifier that certain large creditors use to facilitate electronic payment in chapter 13 cases.

**4. Secured Claim:**
Check whether the claim is fully or partially secured. Skip this section if the claim is entirely unsecured. (See Definitions.) If the claim is secured, check the box for the nature and value of property that secures the claim, attach copies of lien documentation, and state, as of the date of the bankruptcy filing, the annual interest rate (and whether it is fixed or variable), and the amount past due on the claim.

**5. Amount of Claim Entitled to Priority Under 11 U.S.C. §507(a).**
If any portion of the claim falls into any category shown, check the appropriate box(es) and state the amount entitled to priority. (See Definitions.) A claim may be partly priority and partly nonpriority. For example, in some of the categories, the law limits the amount entitled to priority.

**6. Credits:**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

**7. Documents:**
Attach redacted copies of any documents that show the debt exists and a lien secures the debt. You must also attach copies of documents that evidence perfection of any security interest. You may also attach a summary in addition to the documents themselves. FRBP 3001(c) and (d). If the claim is based on delivering health care goods or services, limit disclosing confidential health care information. Do not send original documents, as attachments may be destroyed after scanning.

**8. Date and Signature:**
The individual completing this proof of claim must sign and date it. FRBP 9011. If the claim is filed electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what constitutes a signature. If you sign this form, you declare under penalty of perjury that the information provided is true and correct to the best of your knowledge, information, and reasonable belief. Your signature is also a certification that the claim meets the requirements of FRBP 9011(b). Whether the claim is filed electronically or in person, if your name is on the signature line, you are responsible for the declaration. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. If the claim is filed by an authorized agent, attach a complete copy of any power of attorney, and provide both the name of the individual filing the claim and the name of the agent. If the authorized agent is a service, identify the corporate servicer as the company. Criminal penalties apply for making a false statement on a proof of claim.

B 10 (Official Form 10) (12/11)                                                                                                           3

B 10 (Official Form 10) (12/11)                                                                                                           3

## DEFINITIONS

**Debtor**
A debtor is the person, corporation, or other entity that has filed a bankruptcy case.

**Creditor**
A creditor is a person, corporation, or other entity to whom debtor owes a debt that was incurred before the date of the bankruptcy filing. See 11 U.S.C. §101 (10).

**Claim**
A claim is the creditor's right to receive payment for a debt owed by the debtor on the date of the bankruptcy filing. See 11 U.S.C. §101 (5). A claim may be secured or unsecured.

**Proof of Claim**
A proof of claim is a form used by the creditor to indicate the amount of the debt owed by the debtor on the date of the bankruptcy filing. The creditor must file the form with the clerk of the same bankruptcy court in which the bankruptcy case was filed.

**Secured Claim Under 11 U.S.C. §506(a)**
A secured claim is one backed by a lien on property of the debtor. The claim is secured so long as the creditor has the right to be paid from the property prior to other creditors. The amount of the secured claim cannot exceed the value of the property. Any amount owed to the creditor in excess of the value of the property is an unsecured claim. Examples of liens on property include a mortgage on real estate or a security interest in a car. A lien may be voluntarily granted by a debtor or may be obtained through a court proceeding. In some states, a court judgment is a lien.

A claim also may be secured if the creditor owes the debtor money (has a right to setoff).

**Unsecured Claim**
An unsecured claim is one that does not meet the requirements of a secured claim. A claim may be partly unsecured if the amount of the claim exceeds the value of the property on which the creditor has a lien.

**Claim Entitled to Priority Under 11 U.S.C. §507(a)**
Priority claims are certain categories of unsecured claims that are paid from the available money or property in a bankruptcy case before other unsecured claims.

**Redacted**
A document has been redacted when the person filing it has masked, edited out, or otherwise deleted, certain information. A creditor must show only the last four digits of any social-security, individual's tax-identification, or financial-account number, only the initials of a minor's name, and only the year of any person's date of birth. If the claim is based on the delivery of health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information.

**Evidence of Perfection**
Evidence of perfection may include a mortgage, lien certificate of title, financing statement, or other document showing that the lien has been filed or recorded.

## INFORMATION

**Acknowledgment of Filing of Claim**
To receive acknowledgment of your filing, you may either enclose a stamped self-addressed envelope and a copy of this proof of claim or you may access the court's PACER system (http://www.pacer.psc.uscourts.gov) for a small fee to view your filed proof of claim.

**Offers to Purchase a Claim**
Certain entities are in the business of purchasing claims for an amount less than the face value of the claims. One or more of these entities may contact the creditor and offer to purchase the claim. Some of the written communications from these entities may easily be confused with official court documentation or communications from the debtor. These entities do not represent the bankruptcy court or the debtor. The creditor has no obligation to sell its claim. However, if the creditor decides to sell its claim, any transfer of such claim is subject to FRBP 3001(e), any applicable provisions of the Bankruptcy Code (11 U.S.C. § 101 et seq.), and any applicable orders of the bankruptcy court.



B 10 (Attachment A) (12/11)

## Mortgage Proof of Claim Attachment

If you file a claim secured by a security interest in the debtor's principal residence, you must use this form as an attachment to your proof of claim. See Bankruptcy Rule 3001(c)(2).

| Name of debtor: | Norma Vazquez aka Norma Salinas | Case number: | 12-35041 |
|---|---|---|---|
| Name of creditor: | LOANCARE, A DIVISION OF FNF SERVICING, INC | Last four digits of any number you use to identify the debtor's account: | 4  5  6  9 |

### Part 1: Statement of Principal and Interest Due as of the Petition Date

Itemize the principal and interest due on the claim as of the petition date (included in the Amount of Claim listed in Item 1 on your Proof of Claim form).

1. Principal due          (1)  $  275,134.12

2. Interest due

| Interest rate | From mm/dd/yyyy | To mm/dd/yyyy | Amount |
|---|---|---|---|
| 4.875% | 06/ 01/2011 | 06/ 01/2012 | $  13,316.84 |
| % | /  / | /  / | $ |
| % | /  / | /  / | + $ |

Total interest due as of the petition date    $  13,316.84   Copy total here ▶ (2) + $  13,316.84

3. Total principal and interest due          (3)  $  288,450.96

### Part 2: Statement of Prepetition Fees, Expenses, and Charges

Itemize the fees, expenses, and charges due on the claim as of the petition date (included in the Amount of Claim listed in Item 1 on the Proof of Claim form).

| Description | Dates incurred | | Amount |
|---|---|---|---|
| 1. Late charges | | (1) | $ |
| 2. Non-sufficient funds (NSF) fees | | (2) | $ |
| 3. Attorney's fees | | (3) | $  531.25 |
| 4. Filing fees and court costs | | (4) | $ |
| 5. Advertisement costs | | (5) | $ |
| 6. Sheriff/auctioneer fees | | (6) | $ |
| 7. Title costs | | (7) | $ |
| 8. Recording fees | | (8) | $ |
| 9. Appraisal/broker's price opinion fees | | (9) | $ |
| 10. Property inspection fees | | (10) | $  57.00 |
| 11. Tax advances (non-escrow) | | (11) | $ |
| 12. Insurance advances (non-escrow) | | (12) | $ |
| 13. Escrow shortage or deficiency (Do not include amounts that are part of any installment payment listed in Part 3.) | | (13) | $ |
| 14. Property preservation expenses. Specify: | | (14) | $ |
| 15. Other. Specify: | | (15) | $ |
| 16. Other. Specify: | | (16) | $ |
| 17. Other. Specify: | | (17) | $ |
| 18. Total prepetition fees, expenses, and charges. Add all of the amounts listed above. | | (18) | $  588.25 |

B 10 (Attachment A) (12/11)                                                                            Page 2

## Part 3. Statement of Amount Necessary to Cure Default as of the Petition Date

Does the installment payment amount include an escrow deposit?

☐ No

X  Yes  Attach to the Proof of Claim form an escrow account statement prepared as of the petition date in a form consistent with applicable nonbankruptcy law.

| | | | | |
|---|---|---|---|---|
| 1. Installment payments due | Date last payment received by creditor | | 06/01/2012 | |
| | Number of installment payments due | (1) | 13 | |
| 2. Amount of installment payments due | 13 installments @ $2,406.04 | | $ 31,278.52 | |
| | _____ installments @ _____ | | $ _____ | |
| | _____ installments @ _____ | + | $ _____ | |
| | Total installment payments due as of the petition date | | $ 31,278.52 | Copy total here ▶ (2) $ 31,278.52 |
| 3. Calculation of cure amount | Add total prepetition fees, expenses, and charges | | | Copy total from Part 2 here ▶ + $ 588.25 |
| | Subtract total of unapplied funds (funds received but not credited to account) | | | − $ _____ |
| | Subtract amounts for which debtor is entitled to a refund | | | − $ _____ |
| | Total amount necessary to cure default as of the petition date | | | (3) $ 31,866.77 |

Copy total onto Item 4
of Proof of Claim form

LOANCARE
P.O. BOX 8068
VIRGINIA BEACH, VIRGINIA 23460
1-800-274-0000

**Representation of Printed Document**

11/13/12

8-754-61518-0000000-001-000-100-000-000

Loan Num

RAFAEL F VAZQUEZ
C/O NOSA ADUWA    ATTORNEY
720 N POST OAK RD STE 280
HOUSTON TX 77024-3813

### ANNUAL ESCROW ACCOUNT DISCLOSURE STATEMENT

As you know, we are required to maintain an escrow account which is used to pay your real estate taxes and/or insurance premiums. This account must be analyzed annually to determine whether enough funds are being collected monthly, and whether the account has a shortage or surplus based on the anticipated activity.

#### PRESENT MORTGAGE PAYMENT

| | |
|---|---|
| PRIN. AND INT. | $1,470.71 |
| ESCROW | $699.78 |
| PRORTD SHORTAGE | $617.84 |
| Total Mortgage Payment | $2,867.33 |

#### ANTICIPATED ANNUAL DISBURSEMENTS

These are the escrow items we anticipate we will collect for or pay on your behalf in the upcoming 12 month period. The dollar amount shown may be the last amount actually paid for that item, or may project the amount due as defined by Federal Law. Based on these anticipated disbursements, the amount of your escrow deposit is calculated and displayed here.

| Bills due in the upcoming year | | |
|---|---|---|
| | MORTGAGE INS | $1,271.15 |
| | COUNTY TAX | $1,102.12 |
| | TAXES | $3,260.26 |
| | TAXES | $3,411.84 |
| Total Anticipated Annual Disbursement(s) | $9,076.40 | One-Twelfth/Monthly Amount    $697.45 |

#### ACCOUNT HISTORY

The following statement of activity in your escrow account from 04/2012 through 07/2012 displays actual activity as it occurred on your escrow account during that period. If you received Account Projections with a prior analysis, they are included again here for comparison.

| Month | Payments Projected | Actual | Disbursements Projected | Actual | Description | Projected Escrow Account Balance | Actual Escrow Account Balance |
|---|---|---|---|---|---|---|---|
| | | | | | Beginning Balance | $3,957.80 | -$4,030.70 |
| April | 898.76 | * | 107.28 | | RBP-FHA MONT | 4,740.12 | -4,030.70 |
| April | | | | 107.28* | RBP-FHA MONT | 4,740.12 | -4,137.98 |
| May | 898.76 | * | 107.28 | | RBP-FHA MONT | 5,540.84 | -4,137.98 |
| May | | | | 107.28* | RBP-FHA MONT | 5,540.84 | -4,245.22 |
| June | 898.76 | * | 107.28 | | RBP-FHA MONT | 6,332.16 | -4,245.22 |
| June | | | | 107.28* | RBP-FHA MONT | 6,332.16 | -4,352.46 |
| July | 898.76 | * | 107.28 | | RBP-FHA MONT | 7,123.58 | -4,352.46 |
| July | | | | 107.28* | RBP-FHA MONT | 7,123.58 | -4,459.74 |

An asterisk (*) beside an amount indicates a difference from projected activity either in the amount of the date. The letter E beside an amount indicates that the payment or disbursement has not yet occurred, but is estimated to occur as shown.

Last year we anticipated that Disbursements would be made from your Escrow Account during the period equaling $10,765.35. Under Federal Law, your lowest monthly balance should not have exceeded $1,683.04, or 1/6th of total anticipated payments from the account, unless your mortgage contract or State law specifies the lower amount.

#### ACCOUNT PROJECTIONS

The following estimates of activity in your escrow account from 08/12 through 07/13 is provided for your information. All payments we anticipate receiving as well as disbursements we anticipate making on your behalf are included, along with the Project Escrow Account Balance, derived by carrying forward your current actual escrow balance. The required Escrow Account Balance displays the amount actually required to be on hand as specified by Federal Law, State Law, or your mortgage documents, and may include a cushion of up to 1/6th of your Annual Disbursements. Please retain this statement for comparison with the actual activity in your account at the end of the next escrow account computation year.

*** CONTINUED ON REVERSE SIDE ***

## S U R P L U S

| | | | |
|---|---|---|---|
| Customer Loan Number: | | Surplus Amount: | $1,392.93 |
| Customer Name: | RAFAEL F VAZQUEZ | | |

Due to the status of your account, we will retain your remaining surplus.

Internet Reprint

**\*\*\* CONTINUATION \*\*\***

| Month | Anticipated Amount To Escrow | From Escrow | Description | Projected Escrow Account Balance | Required Escrow Account Balance |
|---|---|---|---|---|---|
| | | | Beginning Balance | $12,822.61 | $6,429.69 |
| August | 697.45 | 105.93 | RBP-FHA MONT | 13,614.13 | 6,321.20 |
| September | 697.45 | 105.93 | RBP-FHA MONT | 14,405.85 | 7,012.72 |
| October | 697.45 | 105.93 | RBP-FHA MONT | 15,197.17 | 7,604.24 |
| November | 697.45 | 105.93 | RBP-FHA MONT | 15,988.69 | 8,595.70 |
| December | 697.45 | 105.93 | RBP-FHA MONT | 16,780.21 | 9,387.29 |
| December | | 1,102.12 | COUNTY TAXES | 16,678.09 | 6,295.16 |
| December | | 3,290.28 | SCHOOL TAX | 12,387.81 | 4,994.86 |
| December | | 3,411.04 | WATER TAX | 8,976.97 | 1,693.04 |
| January | 697.45 | 105.93 | RBP-FHA MONT | 9,707.49 | 2,374.50 |
| February | 697.45 | 105.93 | RBP-FHA MONT | 10,559.01 | 3,100.08 |
| March | 697.45 | 105.93 | RBP-FHA MONT | 11,350.53 | 3,957.60 |
| April | 697.45 | 105.93 | RBP-FHA MONT | 12,142.05 | 4,749.12 |
| May | 697.45 | 105.93 | RBP-FHA MONT | 12,933.57 | 5,540.64 |
| June | 697.45 | 105.93 | RBP-FHA MONT | 13,725.09 | 6,332.16 |
| July | 697.45 | 105.93 | RBP-FHA MONT | 14,516.61 | 7,123.68 |

Your Projected Escrow Account Balance as of 07/31/12 is $12,822.61. Your Required Beginning Escrow Balance according to this analysis should be $6,429.69.

This means you have a Surplus of $7,392.95. This surplus must be returned to you unless it is less than $50.00, in which case we have the additional option of keeping it and lowering your monthly payments accordingly. Due to the delinquent status of your account, however, we will retain your remaining surplus. Once during this period, your Required Escrow Account Balance should be reduced to $1,693.04, as shown in December.  This amount represents the cushion selected by us as allowed by your mortgage contract, Federal and State Law.

**NEW   MORTGAGE   PAYMENT**

| | | | |
|---|---|---|---|
| Your new payment consists of: | PRIN. AND INT. | | $1,470.71 |
| | ESCROW | | $897.45 |
| New Mortgage Payment | Beginning | 08/01/12 | $2,368.16 |

Should you have any questions about this Escrow Analysis, please call our Customer Service Department toll-free at 1-800-274-6600.

# SELENE® FINANCE

9990 Richmond Avenue
Suite 400 South
Houston, TX 77042
Telephone (877) 768-3759
Fax (866) 926-5498
www.selenefinance.com

Hours of Operation (CT)
Monday - Thursday: 8 a.m. - 7 p.m.
Friday: 8 a.m. - 5 p.m.

10/22/2015

RAFAEL F VAZQUEZ
122 TUAM ST STE 100
HOUSTON, TX 77006-3214

Sent Via Certified Mail
9314 7100 1170 0836 2095 05

Re:   Loan #:       500472048
      Property:     24927 GARNET SHADOW LANE
                    KATY, TX 77494

## NOTICE OF DEFAULT AND INTENT TO ACCELERATE

Dear Mortgagor(s):

Selene Finance LP ("Selene"), on behalf of the owner and holder of your mortgage loan, and in accordance with the referenced Deed of Trust/Mortgage and applicable state laws, provides you with formal notice of the following:

The mortgage loan associated with the referenced Deed of Trust/Mortgage is in default for failure to pay amounts due.

To cure this default, you must pay all amounts due under the terms of your Note and Deed of Trust/Mortgage. As of 10/22/2015, your loan is due for 11/01/2012 and the total amount necessary to cure your default is $71,005.32, which consists of the following:

| | |
|---|---:|
| Next Payment Due Date | 11/01/2012 |
| Total Principal and Interest Due: | $52,945.56 |
| Escrow Advance Balance: | $16,209.55 |
| Late Charges: | $98.21 |
| Uncollected NSF Fees: | $0.00 |
| Other Fees: | $0.00 |
| Corporate Advance Balance: | $1,752.00 |
| Unapplied Balance: | ($0.00) |
| **TOTAL YOU MUST PAY TO CURE DEFAULT:** | **$71,005.32** |

As of 10/22/2015, the current outstanding principal balance is $269,311.08 and the total debt you owe is $325,747.73.



9314 7100

PETITIONER'S EXHIBIT
" E "

1/1/2016　　　　　　　　　　　　　　BK CM/ECF LIVE - US Bankruptcy Court-Texas Southern

(Attachments: # 1 Vazquez - Affidavit Asset Acceptance-GOODYEAR)(Aduwa, Nosa)

Description: (8-1) 42076947

Remarks:

| Creditor: (8099150) Asset Acceptance Llc Attention Bankruptcy Po Box 2036 Warren, MI 48090 | Claim No: 9 Original Filed Date: 10/17/2012 Original Entered Date: 10/17/2012 | Status: Filed by: CR Entered by: Robert W Bishop Modified: |
|---|---|---|

Amount claimed: $7720.82

History:

| Details | 9-1 | 10/17/2012 | Claim #9 filed by Asset Acceptance Llc, Amount claimed: $7720.82 (Bishop, Robert |
|---|---|---|---|
| | 54 | 02/22/2013 | Objection to Claim Number 9 by Claimant Asset Acceptance LLC. Hearing scheduled for 4/18/2013 at 02:00 PM at Houston, Courtroom 403 (KKB). (Attachments: # 1 Vazquez - Affidavit Asset Acceptance-SEARS)(Aduwa, Nosa) |

Description: (9-1) 35930340

Remarks:

| Creditor: (8303649) Loan Care, a Division of FNF Servicing, Inc. 3637 Sentara Way, Virginia Beach, BA 23452 | Claim No: 10 Original Filed Date: 12/20/2012 Original Entered Date: 12/20/2012 Last Amendment Filed: 03/06/2013 Last Amendment Entered: 03/06/2013 | Status: Filed by: CR Entered by: Beatrice Grevel Modified: |
|---|---|---|

Amount claimed: $289039.21
Secured claimed: $289039.21

History:

| Details | 10-1 | 12/20/2012 | Claim #10 filed by Loan Care, a Division of FNF Servicing, Inc., Amount claimed: $289039.21 (Grevel, Beatrice ) |
|---|---|---|---|
| Details | 10-2 | 01/25/2013 | Amended Claim #10 filed by Loan Care, a Division of FNF Servicing, Inc., Amount claimed: $289039.21 (Grevel, Beatrice ) |
| Details | 10-3 | 03/06/2013 | Amended Claim #10 filed by Loan Care, a Division of FNF Servicing, Inc., Amount claimed: $289039.21 (Grevel, Beatrice ) |

Description: (10-1)
(10-2)
(10-3)

Remarks: (10-1) Arrearages. 39,423.54
(10-2) Arrearage $39423.54
(10-3) Arrearage $31866.77

| Creditor: (8357784) Bank of America,N.A. P.O.BOX 660933 | Claim No: 11 Original Filed Date: 02/07/2013 | Status: Withdraw 87 Filed by: CR Entered by: Michael V |
|---|---|---|


PETITIONER'S
EXHIBIT
"D"

1/1/2016                                    BK CM/ECF LIVE - US Bankruptcy Court-Texas Southern

| DALLAS, TX 75266-0933 | Original Entered Date: 02/07/2013 | Modified: |
|---|---|---|

| Amount claimed: $13845.41 | | |
|---|---|---|
| Secured claimed: $13845.41 | | |

| History: | | | |
|---|---|---|---|
| Details | 11-1 | 02/07/2013 | Claim #11 filed by Bank of America, N.A., Amount claimed: $13845.41 (Zientz, Michael) |
| | 87 | 06/05/2013 | Withdrawal of Claim: 11 (Wu, Stephen) Status: Withdraw |

| Description: |
|---|
| Remarks: |

## Claims Register Summary

**Case Name:** Norma Vazquez
**Case Number:** 12-35041
**Chapter:** 13
**Date Filed:** 07/02/2012
**Total Number Of Claims:** 11

| Total Amount Claimed* | $342362.54 |
|---|---|
| Total Amount Allowed* | |

*Includes general unsecured claims

**The values are reflective of the data entered. Always refer to claim documents for actual amounts.**

| | Claimed | Allowed |
|---|---|---|
| Secured | $302884.62 | |
| Priority | $2979.97 | |
| Administrative | | |

| PACER Service Center | | | |
|---|---|---|---|
| Transaction Receipt | | | |
| 12/31/2015 23:50:13 | | | |
| PACER Login: | de035111:2535035:0 | Client Code: | |
| Description: | Claims Register | Search Criteria: | 12-35041 Filed or Entered From: 12/30/2010 Filed or Entered To: 12/31/2015 |
| Billable Pages: | 2 | Cost: | 0.20 |

This instrument prepared by:
Butler & Hosch, P.A.
13800 Montfort Drive, Suite 300
Dallas, Texas 75240
MERS # 888-679-6377
MIN # 1002862-2008143351-5

## ASSIGNMENT AND TRANSFER OF LIEN
### KNOW ALL MEN BY THESE PRESENTS:

That GOVERNMENT NATIONAL MORTGAGE ASSOCIATION, party of the first part, in consideration of the sum of $10.00 and other valuable considerations, received from or on behalf of LOANCARE, A DIVISION OF FNF SERVICING, INC., party of the second part, at or before the delivery of these presents, the receipt whereof is hereby acknowledged, does hereby grant, bargain, sell, assign, transfer and set over unto the said party of the second part a certain deed of trust and/or security instrument bearing the date September 5, 2008, executed by RAFAEL F. VAZQUEZ AND NORMA L. VAZQUEZ, in favor of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR LENDING KEY INC., ITS SUCCESSORS AND ASSIGNS, and recorded September 9, 2008 in Official Records in Instrument number 2008099434, Public Records of Fort Bend County, State of Texas, upon the following described place or parcel of land, situate and being in said County and State, to-wit:

LOT SIX (6), IN BLOCK ONE (1) OF CINCO RANCH SOUTHWEST SECTION ELEVEN (11), A SUBDIVISION IN FORT BEND COUNTY, TEXAS, ACCORDING TO THE OFFICIAL PUBLIC RECORDS OF FORT BEND COUNTY, TEXAS, IN PLAT NO. 20070170 OF THE PLAT RECORDS OF FORT BEND COUNTY, TEXAS.

Together with the note or obligation described in said deed of trust and/or security instrument, and the monies due and to become due thereon.

TO HAVE AND TO HOLD the same unto the said party of the second part, its heirs, legal representatives, successors and assigns forever.

Executed this ___ day of _____, 2012. , to be effective *****

GOVERNMENT NATIONAL MORTGAGE ASSOCIATION

By: LoanCare, a Division of FNF Servicing, Inc.

as Attorney in fact under limited power of Attorney

BY: _____ VICE PRESIDENT

STATE OF VIRGINIA
CITY OF VIRGINIA BEACH

Before me, the undersigned Notary Public on this day personally appeared _____ who is the VICE PRESIDENT of LoanCare, a Division of FNF Servicing, Inc., as Attorney in fact under limited power of Attorney for GOVERNMENT NATIONAL MORTGAGE ASSOCIATION, on behalf of said Corporation, known to me to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he/she executed the same for the purposes and consideration therein expressed.

Given under my hand of office on _____

Notary Signature

Printed Name

My Commission Expires: 6/30/2014

After Recording Return To:
Butler & Hosch, P.A.
13800 Montfort Drive, Suite 300
Dallas, Texas 75240

CHERYL L. PARKER
NOTARY PUBLIC
REGISTRATION # 7069247
COMMONWEALTH OF VIRGINIA
MY COMMISSION EXPIRES
JUNE 30, 2014

B&H #



PETITIONER'S
EXHIBIT
"C"

MOD   2011002602

6 PGS

# LOAN MODIFICATION AGREEMENT
(Providing for Fixed Interest Rate)

Recording Requested By & Return To:
Chicago Title ServiceLink Division
4000 Industrial Blvd
Aliquippa, PA 15001

MERS Phone: 1-888-679-6377

Loan Number: 5184569          MIN 1002862 20081433515

This Loan Modification Agreement ("Agreement") made this 26th day of October, 2010 between
Rafael F. Vazquez and Norma L. Vazquez.

("Borrower") and
LoanCare, a Division of FNF Servicing, Inc.

LOANCARE SERVICING CENTER, INC. MODIFIED
LOAN MODIFICATION   AGREEMENT   WITH MERS  - Single-Family   - Fannie Mae Uniform Instrument -
Providing  For Fixed Interest Rate
Amended for Texas to include Notary Acknowledgments  and other information
VMP ®
Wolters Kluwer Financial Services ©2009, 2008

Form 3179 1/01 (rev. 01/09)
613652   (0904)
Page 1 of 6

PETITIONER'S
EXHIBIT
"B"



("Lender"), and Mortgage Electronic Registration Systems, Inc., (Mortgagee), amends and supplements (1) the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated                September 5, 2008                and granted or assigned to Mortgage Electronic Registration Systems, Inc, as mortgagee of record (solely as nominee for Lender and Lender's successors and assigns), P.O. Box 2026, Flint, Michigan 48501-2026 and recorded in the

Official Public Records                                Records of

[Name of Records]

Fort Bend County, Texas

[County and State, or other jurisdiction]

and (2) the Note, bearing the same date as, and secured by, the Security Instrument, which covers the real and personal property described in the Security Instrument and defined therein as the "Property," located at

[Property Address]

the real property described being set forth as follows:

LOT SIX (6), IN BLOCK ONE (1) OF CINCO RANCH SOUTHWEST SECTION ELEVEN (11), A SUBDIVISION IN FORT BEND COUNTY, TEXAS, ACCORDING TO THE OFFICIAL PUBLIC RECORDS OF FORT BEND COUNTY, TEXAS IN PLAT NO.20070170 OF THE PLAT RECORDS OF FORT BEND COUNTY. TEXAS.

     In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1.  As of        October 26, 2010        , the amount payable under the Note and the Security Instrument (the "Unpaid Principal Balance") is U.S. $ 277,907.00        consisting of the unpaid amount(s) loaned to Borrower by Lender plus any interest and other amounts capitalized.

2.  Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of Lender. Interest will be charged on the Unpaid Principal Balance for the first year at the yearly rate of                4.875 % from October 1, 2010                .

    Borrower promises to make monthly payments of principal and interest in the amount of U.S. $ 1,470.71        , beginning on the    1st    day of        November, 2010        , and continuing thereafter on the same day of each succeeding   month until principal and interest are paid in full.

    The yearly rate of                4.875 % will remain in effect until principal and interest is paid in full.

    If on        October 1, 2040        (the "Maturity Date"), Borrower still owes amounts under the Note and the Security Instrument, as amended by this Agreement, Borrower will pay these amounts in full on the Maturity Date.

3.  If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument.

    If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

LOANCARE SERVICING CENTER, INC. MODIFIED
LOAN MODIFICATION   AGREEMENT   WITH MERS - Single-Family   - Fannie Mae Uniform Instrument -
Providing  For Fixed Interest Rate
Amended for Texas to Include Notary Acknowledgments and other Information
VMP ®
Wolters Kluwer Financial Services ©2009, 2008

Form 3179   3261 (rev. 01/09)
3179.521   (0904)
Page 2 of 4

4. Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever canceled, null and void, as of the date specified in paragraph No. 1 above:

(a) all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note, including, where applicable, the Timely Payment Rewards rate reduction, as described in paragraph 1 of the Timely Payment Rewards Addendum to Note and paragraph A.1 of the Timely Payment Rewards Rider. By executing this Agreement, Borrower waives any Timely Payment Rewards rate reduction to which Borrower may have otherwise been entitled; and

(b) all terms and provisions of any adjustable rate rider or Timely Payment Rewards Rider, where applicable, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

5. Borrower understands and agrees that:

(a) All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

(b) All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law. Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender.

(c) Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

(d) All costs and expenses incurred by Lender in connection with this Agreement, including recording fees, title examination, and attorney's fees, shall be paid by the Borrower and shall be secured by the Security Instrument, unless stipulated otherwise by Lender.

(e) Borrower agrees to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower.

LOANCARE SERVICING CENTER, INC. MODIFIED
LOAN MODIFICATION AGREEMENT WITH MERS - Single-Family - Fannie Mae Uniform Instrument -
Providing For Fixed Interest Rate
Amended for Texas to include Notary Acknowledgments and other information
VUP ®
Wolters Kluwer Financial Services ©2009, 2008

Form 3179 1/01 (rev. 01/09)
3179ZI (0904)
Page 3 of 5

THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES .

TDL# 13659 88

_____ (Seal)
Rafael F. Vazquez                                -Borrower

_____ (Seal)
Norma L. Vazquez                                 -Borrower

TDL No. 1233361?

_____ (Seal)
                                                 -Borrower

_____ (Seal)
                                                 -Borrower

_____ (Seal)
                                                 -Borrower

_____ (Seal)
                                                 -Borrower

_____ (Seal)
                                                 -Borrower

_____ (Seal)
                                                 -Borrower

BORROWER ACKNOWLEDGMENT

State of Texas
County of Fort Bend
This instrument was acknowledged before me on                                by
Rafael F. Vazquez, Norma L. Vazquez.

[Notary Seal: MARY E. GONGORA, Notary Public, State of Texas, My Commission Expires April 20, 2011]

My commission expires:

APRIL 20, 2011

_____
Notary Public
MARY E GONGORA
NOTARY PUBLIC, STATE OF TX.

LOANCARE SERVICING CENTER, INC. MODIFIED
LOAN MODIFICATION AGREEMENT  WITH MERS - Single-Family - Fannie Mae Uniform Instrument -
Providing For Fixed Interest Rate
Amended for Texas to include Notary Acknowledgments and other information
VMP ®
Wolters Kluwer Financial Services ©2009, 2008

Form 3179 1/01 (rev. 01/09)
013579 (0009)
Page 4 of 6



LoanCare, a Division of FNF Servicing, Inc. _____ (Seal)
-Lender

By: _____

Aaron Shipped

**LENDER ACKNOWLEDGMENT**

Commonwealth/State of Virginia          County of  Virginia Beach

The foregoing  instrument  was  acknowledged  before me this  NOV. 12, 2010          by
AARON SHIPREE          AVR
as attorney-in-fact  on behalf of
LoanCare, a Division of FNF Servicing, Inc.

a                              Virginia                  corporation,  on behalf of the said corporation.

_____

Dianna Davenport

My Commission Expires:
Acting  in the County of  Virginia Beach

[Notary Seal: DIANNA DAVENPORT / NOTARY PUBLIC / REG # 7327571 / MY COMMISSION EXPIRES 9/30/2014 / COMMONWEALTH OF VIRGINIA]

LOANCARE SERVICING CENTER, INC. MODIFIED
LOAN MODIFICATION   AGREEMENT   WITH MERS  - Single-Family  - Fannie Mae Uniform Instrument -
Providing  For Fixed Interest Rate
Amended for Texas to include Notary Acknowledgments  and other information
VMP ®
Wolters Kluwer Financial Services ©2009, 2008

Form 3162 3161 (rev. 01/09)
013151-  (0904)
Page 5 of 6

Mortgage Electronic Registration Systems, Inc.                    (Seal)
                                                                  -Mortgagee

By: _____
        Aaron Shipped

### MORTGAGEE ACKNOWLEDGMENT

Commonwealth/State of Virginia                    County of  Virginia Beach

The foregoing instrument was acknowledged before me this NOV. 12, 2010        by

AARON SHIPPED                          AN OFFICER                  , of

Mortgage Electronic Registration Systems, Inc.,
a Delaware corporation, on behalf of the said corporation.

                                        Dianna Davenport
                                        Dianna Davenport

                                        My Commission Expires:
                                                        Virginia Beach

DIANNA DAVENPORT
NOTARY
PUBLIC
REG # 7327571
MY COMMISSION
EXPIRES
9/30/2014
COMMONWEALTH OF VIRGINIA

LOANCARE SERVICING CENTER, INC. MODIFIED
LOAN MODIFICATION   AGREEMENT   WITH MERS - Single-Family  - Fannie Mae Uniform Instrument -
Providing  For Fixed Interest Rate
Amended for Texas to include Notary Acknowledgments  and other information
VMP ®
Wolters Kluwer Financial Services ©2009, 2008

Form 3179  1/01 (rev. 01/09)

D13021   (0904)
Page 6 of 6

RETURNED AT COUNTER TO: Byron Bass
520 Post Oak Blvd
Suite 120  Houston, Tx.  77027

FILED AND RECORDED

OFFICIAL PUBLIC RECORDS

Dianne Wilson

2011 Jan 06 04:10 PM
LJ $31.00
Dianne Wilson COUNTY CLERK
FT BEND COUNTY TEXAS

2011002602



**NOTE**

CERTIFIED TRUE COPY

Loan Number

FHA Case No

SEPTEMBER 5, 2008
[Date]

HOUSTON
[City]

TEXAS
[State]

## 1. PARTIES

"Borrower" means each person signing at the end of this Note, and the person's successors and assigns.
"Lender" means LENDING KEY INC.

and its successors and assigns.

## 2. BORROWER'S PROMISE TO PAY; INTEREST

In return for a loan received from Lender, Borrower promises to pay the principal sum of
TWO HUNDRED FORTY-SIX THOUSAND ONE HUNDRED SIXTY-THREE AND
00/100                                                   Dollars (U.S. $ 246,163.00 )
plus interest, to the order of Lender. Interest will be charged on unpaid principal, from the date of disbursement of
the loan proceeds by Lender, at the rate of SEVEN AND 500/1000                                       percent
( 7.500 %) per year until the full amount of principal has been paid.

## 3. PROMISE TO PAY SECURED

Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated
the same date as this Note and called the "Security Instrument." The Security Instrument protects the Lender from
losses which might result if Borrower defaults under this Note.

## 4. MANNER OF PAYMENT

**(A) Time**
Borrower shall make a payment of principal and interest to Lender on the 1st  day of each month beginning
on NOVEMBER 1, 2008               .  Any principal and interest remaining on the  1st    day of
OCTOBER, 2038           , will be due on that date, which is called the "Maturity Date."

**(B) Place**
Payment shall be made at PO BOX 986, NEWARK, NEW JERSEY 07101-0986

as Lender may designate in writing by notice to Borrower,                         , or at such other place

**(C) Amount**
Each monthly payment of principal and interest will be in the amount of U.S. $ 1,721.21
This amount will be part of a larger monthly payment required by the Security Instrument, that shall be applied to
principal, interest and other items in the order described in the Security Instrument.

**(D) Allonge to this Note for Payment Adjustments**
If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants
of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge
were a part of this Note.

TEXAS - FHA FIXED RATE NOTE
TXFHA.NTE  05/01/08

Page 1 of 3

DocMagic ☎ 800-649-1362
www.docmagic.com

PETITIONER'S EXHIBIT
"A"

(Check applicable box.)

☐ Growing Equity Allonge
☐ Graduated Payment Allonge
☐ Other (specify):

**5.  BORROWER'S RIGHT TO PREPAY**

Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of any month. Lender shall accept prepayment on other days provided that Borrower pays interest on the amount prepaid for the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary. If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.

**6.  BORROWER'S FAILURE TO PAY**

(A) Late Charge for Overdue Payments

If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of fifteen calendar days after the payment is due, Lender may collect a late charge in the amount of FOUR AND 000/1000                    percent (   4.000   %) of the overdue amount of each payment.

(B) Default

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances, regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designate.

(C) Payment of Costs and Expenses

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

**7.  WAIVERS**

Borrower and any other person who has obligations under this Note waive notice of intention to accelerate, and the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

**8.  GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

**9.  OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do those things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in

TEXAS - FHA FIXED RATE NOTE
TXFHA.NTE 05/03/09

Page 2 of 3

DocMagic EForms 800.649.1362
www.docmagic.com





this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.

THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in pages 1 through 3 of this Note.

_____ [Seal]
RAFAEL F. VAZQUEZ        -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

PAY TO THE ORDER OF
WITHOUT RECOURSE
LENDING KEY
BY: OWEN LUCAS
VICE PRESIDENT

[Sign Original Only]

TEXAS - FHA FIXED RATE NOTE
TXFHA.NTE 08/01/00                    Page 3 of 3          DocMagic eForms 800-649-1362
                                                           www.docmagic.com

**HOLD FOR TEXAS LONE STAR TITLE, L.P.**

After Recording Return To:
LENDING KEY INC.
520 BROADHOLLOW ROAD, SUITE 100E
MELVILLE, NEW YORK 11747
Loan Number: 2008143351

[Space Above This Line For Recording Data]

# DEED OF TRUST

| FHA CASE NO. |
|---|
| 493-8770749-703 |

MIN: 100286?-2008143351-5

**NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS:  YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.**

THIS DEED OF TRUST ("Security Instrument") is made on  SEPTEMBER 5, 2008
The grantor is  RAFAEL F. VAZQUEZ AND NORMA L. VAZQUEZ

("Borrower").

The trustee is  TEXAS LONE STAR TITLE, L.P.

whose address is  10110 WEST SAM HOUSTON PARKWAY NORTH, HOUSTON, TEXAS
77064                                                       ("Trustee").
The beneficiary is Mortgage Electronic Registration Systems, Inc. ("MERS") (solely as nominee for Lender, as hereinafter defined, and Lender's successors and assigns). MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

LENDING KEY INC.                                            ("Lender")
is organized and existing under the laws of
and has an address of  520 BROADHOLLOW ROAD, SUITE 100E, MELVILLE, NEW
YORK 11747
Borrower owes Lender the principal sum of  TWO HUNDRED FORTY-SIX THOUSAND ONE
HUNDRED SIXTY-THREE AND 00/100       Dollars (U.S. $ 246,163.00          ),
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on  OCTOBER 1, 2038
This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest,

FHA TEXAS DEED OF TRUST - MERS
5/96 (05/01/08)                          Page 1 of 10                DocMagic ?????? 800 649-1362
                                                                      www.docmagic.com

advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in FORT BEND County, Texas:
SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS EXHIBIT "A".

which has the address of

[Street]

, Texas

[City]                                    [Zip Code]                    ("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument; but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing, cancelling or assigning this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
1.  Payment of Principal, Interest and Late Charge. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.
2.  Monthly Payment of Taxes, Insurance, and Other Charges. Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. §2601 et seq. and implementing regulations, 24 CFR Part 3500, as they may be amended

FHA TEXAS DEED OF TRUST - MERS
6/96 (05/01/08)                          Page 2 of 10                     DocMagic *Forms* 800-649-1362
                                                                          www.docmagic.com



Txdot.fla.xml

from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

3.   Application of Payments.  All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

FIRST, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

SECOND, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

THIRD, to interest due under the Note;

FOURTH, to amortization of the principal of the Note; and

FIFTH, to late charges due under the Note.

4.   Fire, Flood and Other Hazard Insurance.  Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

5.   Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.  Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property.  Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material



information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

6.   Condemnation.  The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument.  Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

7.   Charges to Borrower and Protection of Lender's Rights in the Property.  Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2.  Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement at the Note rate, and at the option of Lender shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

8.   Fees.  Lender may collect fees and charges authorized by the Secretary.

9.   Grounds for Acceleration of Debt.
(a)   Default.  Lender may, except as limited by regulations issued by the Secretary in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:
(i)   Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or
(ii)   Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

(b)   Sale Without Credit Approval.  Lender shall, if permitted by applicable law (including section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:
(i)   All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and
(ii)   The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property, but his or her credit has not been approved in accordance with the requirements of the Secretary.

**FHA TEXAS DEED OF TRUST - MERS**
6/96 (05/01/08)                                      Page 4 of 10



Txdct.fha.xml

(c)   No Waiver.  If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

(d)   Regulations of HUD Secretary.  In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

(e)   Mortgage Not Insured.  Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within  60  DAYS from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60  DAYS from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility.  Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

10.  Reinstatement.  Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted.  To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding.  Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

11.  Borrower Not Released; Forbearance by Lender Not a Waiver.  Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

12.  Successors and Assigns Bound; Joint and Several Liability; Co-Signers.  The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b).  Borrower's covenants and agreements shall be joint and several.  Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

13.  Notices.  Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method.  The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

14.  Governing Law; Severability.  This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

FHA TEXAS DEED OF TRUST - MERS
6/96 (05/01/08)                                        Page 5 of 10                     DocMagic



T46v2.fha.xml

15. **Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

16. **Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

17. **Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

18. **Foreclosure Procedure.** If Lender requires immediate payment in full under paragraph 9, Lender may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, reasonable attorneys' fees and cost of title evidence.

If Lender invokes the power of sale, Lender or Trustee shall give notice of the time, place and terms of sale by posting and recording the notice at least 21 days prior to sale as provided by applicable law. Lender shall mail a copy of the notice of sale to Borrower in the manner prescribed by applicable law. Sale shall be made at public vendue between the hours of 10 a.m. and 4 p.m. on the first Tuesday of the month. Borrower authorizes Trustee to sell the Property to the highest bidder for cash in one or more parcels and in any order Trustee determines. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying indefeasible title to the Property with covenants of general warranty. Borrower covenants and agrees to defend generally the purchaser's title to the Property against all claims and demands. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

FHA TEXAS DEED OF TRUST - MERS
6/68 (05/01/08)

Page 6 of 10



DocMagic 800-649-1362
www.docmagic.com

If the Property is sold pursuant to this paragraph 18, Borrower or any person holding possession of the Property through Borrower shall immediately surrender possession of the Property to the purchaser at that sale. If possession is not surrendered, Borrower or such person shall be a tenant at sufferance and may be removed by writ of possession.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this paragraph 18 or applicable law.

19. Release. Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

20. Substitute Trustee. Lender, at its option, and with or without cause, may from time to time remove Trustee and appoint, by power of attorney or otherwise, a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by applicable law.

21. Subrogation. Any of the proceeds of the Note used to take up outstanding liens against all or any part of the Property have been advanced by Lender at Borrower's request and upon Borrower's representation that such amounts are due and are secured by valid liens against the Property. Lender shall be subrogated to any and all rights, superior titles, liens and equities owned or claimed by any owner or holder of any outstanding liens and debts, regardless of whether said liens or debts are acquired by Lender by assignment or are released by the holder thereof upon payment.

22. Partial Invalidity. In the event any portion of the sums intended to be secured by this Security Instrument cannot be lawfully secured hereby, payments in reduction of such sums shall be applied first to those portions not secured hereby.

23. Purchase Money; Owelty of Partition; Renewal and Extension of Liens Against Homestead Property; Acknowledgment of Cash Advanced Against Non-Homestead Property. Check box as applicable:

☒ Purchase Money.

The funds advanced to Borrower under the Note were used to pay all or part of the purchase price of the Property. The Note also is primarily secured by the vendor's lien retained in the deed of even date with this Security Instrument conveying the Property to Borrower, which vendor's lien has been assigned to Lender, this Security Instrument being additional security for such vendor's lien.

☐ Owelty of Partition.

The Note represents funds advanced by Lender at the special instance and request of Borrower for the purpose of acquiring the entire fee simple title to the Property and the existence of an owelty of partition imposed against the entirety of the Property by a court order or by a written agreement of the parties to the partition to secure the payment of the Note is expressly acknowledged, confessed and granted.

☐ Renewal and Extension of Liens Against Homestead Property.

The Note is in renewal and extension, but not in extinguishment, of the indebtedness described on the attached Renewal and Extension Exhibit which is incorporated by reference. Lender is expressly subrogated to all rights, liens and remedies securing the original holder of a note evidencing Borrower's indebtedness and the original liens securing the indebtedness are renewed and extended to the date of maturity of the Note in renewal and extension of the indebtedness.

☐ Acknowledgment of Cash Advanced Against Non-Homestead Property.

The Note represents funds advanced to Borrower on this day at Borrower's request and Borrower acknowledges receipt of such funds. Borrower states that Borrower does not now and does not intend ever to reside on, use in any manner, or claim the Property secured by this Security Instrument as a business or residential homestead. Borrower disclaims all homestead rights, interests and exemptions related to the Property.

24. Loan Not a Home Equity Loan. The Loan evidenced by the Note is not an extension of credit as defined by Section 50(a)(6) or Section 50(a)(7), Article XVI, of the Texas Constitution. If the Property is used as Borrower's residence, then Borrower agrees that Borrower will receive no cash from the Loan evidenced by the

FHA TEXAS DEED OF TRUST - MERS
6/96 (05/01/08)

Page 7 of 10

Ts6otx.fha.xml

Note, and that any advances not necessary to purchase the Property, extinguish an owelty lien, complete construction, or renew and extend a prior lien against the Property, will be used to reduce the balance evidenced by the Note or such Loan will be modified to evidence the correct Loan balance, at Lender's option. Borrower agrees to execute any documentation necessary to comply with this paragraph 24.

25.   **Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.

[Check applicable box(es)].

| | | |
|---|---|---|
| ☐ Condominium Rider | ☐ Graduated Payment Rider | ☐ Growing Equity Rider |
| ☒ Planned Unit Development Rider | ☐ Adjustable Rate Rider | ☐ Rehabilitation Loan Rider |
| ☐ Non-Owner Occupancy Rider | ☐ Other [Specify] | |

[REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK]

Txdotz.fha.xml

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in pages 1 through 10 of this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

_____ (Seal)
RAFAEL E. VAZQUEZ        -Borrower

_____ (Seal)
NORMA L. VAZQUEZ         -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

Witness:                              Witness:

_____               _____

FHA TEXAS DEED OF TRUST - MERS
6/96 (05/01/08)                 Page 9 of 10          DocMagic eForms 800-649-1362
                                                      www.docmagic.com

Txdot.fla.xml

——————————— [Space Below This Line For Acknowledgment] ———————————

The State of Texas

County of ~~FORT BEND~~ Harris

Before me, Victoria M. Fras

on this day personally appeared  RAFAEL F. VAZQUEZ AND NORMA D. VAZQUEZ

known to me (or proved to me on the oath of ____

or through  Driver's License

to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he/she executed the same for the purposes and consideration therein expressed.

Given under my hand and seal of office this   5th   day of  SEPTEMBER, 2008

Notary Public Signature

(Seal)
VICTORIA M. FRAZIER
NOTARY PUBLIC,
STATE OF TEXAS
My Commission Expires
MAY 27, 20

My commission expires: ____

FHA TEXAS DEED OF TRUST - MERS
8/96 (05/01/08)

Page 10 of 10

DocMagic *eForms* 800-649-1362
www.docmagic.com

Trtotx.0a.xml



Loan Number: 2008143351

Date: SEPTEMBER 5, 2008

Property Address:

**EXHIBIT "A"**

**LEGAL DESCRIPTION**

LOT SIX (6), IN BLOCK ONE (1) OF CINCO RANCH SOUTHWEST SECTION ELEVEN (11), A SUBDIVISION IN FORT BEND COUNTY, TEXAS, ACCORDING TO THE OFFICIAL PUBLIC RECORDS OF FORT BEND COUNTY, TEXAS, IN PLAT NO. 20070170 OF THE PLAT RECORDS OF FORT BEND COUNTY, TEXAS.

A.P.

DocMagic eXtreme 800-649-1362
www.docmagic.com

Cowdwxt3.kz.xml